CHARITY CATRIONA ORTEGO
v.
GLENN CHARLES ORTEGO
No. 2009 CU 0240
Court of Appeals of Louisiana, First Circuit.
December 2, 2009.
Not Designated for Publication
KAREN CROSBY FULDA, Attorney for Plaintiff/Appellee Charity Catriona Ortego
RYKERT O. TOLEDANO, JR. GORDON T. HERRIN BRIAN G. MEISSNER Attorneys for Defendant/Appellant Glenn Charles Ortego
Before: GUIDRY, PETTIGREW, DOWNING, McDONALD, and HUGHES, JJ.
McDONALD, J.
Glenn Charles Ortego and Charity Catriona Ortego were married on April 2, 2005. Their son, Dakota R. Ortego was born on September 16, 2005. Mrs. Ortego also had a son from a previous marriage, Ian Hardt, who was born in September 2001.
Mrs. Ortego filed a petition for divorce, sole custody of Dakota, and child support on May 7, 2007. Thereafter, by judgment dated June 27, 2008, the parties were awarded joint custody of Dakota, with Mrs. Ortego designated as the domiciliary parent. The judgment ordered that when school was in session, Mr. Ortego would have physical custody every other weekend from Friday until Sunday night, and when school ended, Mr. Ortego would have physical custody of Dakota every other weekend from Friday evening until Monday morning. Mr. Ortego was also given visitation on the Thursday before his non-visitation weekend, two uninterrupted two-week periods during the summer, specifically the last two weeks of June and the last two weeks of July. Mrs. Ortego was given two uninterrupted two-week periods during the summer, specifically the first two weeks of June and the first two weeks of July. The parties were also given alternate holiday visitations in a detailed schedule, which included provisions for Mother's Day, Father's Day, and Dakota's birthday and his parents' birthdays. It was further ordered that the visitation schedule was subject to alteration agreed to by the parents; that all custody exchanges would take place at the St. Tammany Parish Sheriffs Office in Slidell; that a three-hour notice was required to cancel a visitation; that each parent must inform the other of school activities and extracurricular activities; that each parent inform the other of illness or injury and doctor visits and medications; that each provide phone numbers where they could be reached; that the parents refrain from disparaging or complaining about each other in front of the child; that each parent foster a relationship between the child other in front of the child; that each parent foster a relationship between the child and the other parent; and that Mr. Ortego pay child support in the amount of $594.00 per month to Mrs. Ortego.
A judgment of divorce was rendered on July 14, 2008. Mr. Ortego appealed the custody judgment of June 27, 2008. In her brief Ms. Ortego attempts to raise assignments of error contesting the trial court's ruling, however, she failed to comply with La. C.C.P. art. 2133, which requires an appellee who desires to have the judgment modified, revised, or reversed to file either an appeal or answer to appeal not later than fifteen days after the return date or the lodging of the record, whichever is later. Ms. Ortego failed to do so and thus, these issues have not been properly presented to this court.
Thereafter, Mrs. Ortego filed a motion for court costs and attorney fees, asserting that Mr. Ortego had filed a frivolous appeal and he should be made to pay for the costs of the appeal and her attorney fees. In response, Mr. Ortego filed a motion asking the court to assess Mrs. Ortego with his court costs and attorney fees, and asking the court to strike Mrs. Ortego's motion for court costs and attorney fees and to strike her assignments of error.
In his first assignment of error, Mr. Ortego asserts that the trial court abused its discretion in not considering his work schedule in adopting a visitation plan, as his firefighting schedule is based on a sixteen-day rotation. Mr. Ortego argues that the current visitation plan does not serve the best interests of Dakota, nor does it facilitate "frequent and continuing contact" between Dakota and Mr. Ortego. Alternatively, Mr. Ortego argues that there has been a change in circumstances since the custody hearing, as he has retired from the fire department since the trial court hearing, and Mrs. Ortego is no longer working. Thus, he asserts, a more liberal visitation schedule would not interfere with Mrs. Ortego's schedule.
In his second assignment of error, Mr. Ortego asserts that the trial court abused its discretion in failing to consider that Dakota was not yet in school when the trial court made a visitation plan that follows a school schedule.
The trial court noted in its reasons for judgment that the parties had a "very difficult time dealing with each other on all matters concerning the children, or anything else. For example, they seem unable to exchange the child without a confrontation, even when the exchange takes place at a law enforcement agency." As to Mr. Ortego's argument that the custody schedule should revolve around his work schedule, the trial court specifically addressed this issue in its reasons for judgment, stating that "[t]he court totally concurs with the opinion of Dr. Raphael Salcedo [court-appointed psychologist], that this would be totally unworkable and not in the best interest of the child."
Regarding Mr. Ortego's assertion that the trial court did not consider that Dakota was not yet in school when it devised the custody plan, the trial court in its reasons for judgment noted that "[a]ll visitations are based on the child being in school in order to provide continuity and dispense with the necessity of another hearing" when the child started school. Thus, we do not find that the trial court abused its discretion in using a plan that provided such continuity to the child.
However, we are troubled that in this shared custody plan Mr. Ortego has physical custody of Dakota for only 7 out of 28 calendar days (excepting holidays, which are shared equally). Louisiana Revised Statute 9:335 provides in pertinent part that:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
....
B.(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
Further, Dr. Salcedo recommended that the parties have joint custody, with Mrs. Ortego as the domiciliary parent and "liberal" visitation to Mr. Ortego. After a thorough review of the record, in light of the statute that advocates a more generous sharing of Dakota's time between his parents, and in the absence of reasons for judgment why it would not be in the best interest of Dakota to spend more time with Mr. Ortego, we find an abuse of discretion in the splitting of Dakota's time approximately 75% with Mrs. Ortego and 25% with Mr. Ortego. Thus, we find that this case should be remanded to the trial court, so that the court can adjust the schedule to give Dakota more time with Mr. Ortego. While we note that Dr. Salcedo testified that he would not recommend one week on/one week off physical sharing of Dakota, due to the parent's inability to work together, we do believe the trial court could adjust the schedule to give a larger allocation to Mr. Ortego than the current approximate 75/25 split of time. In the interest of continuity for Dakota, we decree that the current child custody schedule be maintained until the trial court issues a replacement custody schedule.
As to Mr. Ortego's argument that there has been a change in circumstances since the trial because both he and Mrs. Ortego have retired, we cannot consider that issue on appeal as the courts of appeal review only issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise. Uniform Rules, Courts of Appeal, Rule 1-3.
Mrs. Ortego's motion for court costs and attorney fees based on a frivolous appeal by Mr. Ortego is denied. Mr. Ortego's motion for court costs and attorney fees and his motion to strike are denied. Costs of the appeal are assessed against Mrs. Ortego.
CUSTODY ORDER MAINTAINED; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.
HUGHES, J., dissenting.
I respectfully dissent. Where joint custody has been decreed, "[t]o the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally." LSA-R.S. 9:335(A). The "best interest of the child" test is a fact-intensive inquiry, requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Martello v. Martello, XXXX-XXXX, p. 5 (La. App. 1 Cir. 3/23/07), 960 So.2d 186, 191. See also LSA-C.C. arts. 131, 134. Since a trial court's determination in a custody case is based heavily on factual findings, an appellate court cannot set aside the trial court's factual findings unless there is no reasonable factual basis for the findings and the findings are manifestly erroneous. Id. The trial court is generally deemed to be in the best position to ascertain the best interest of the child. Babin v. Babin, XXXX-XXXX, p. 7 (La. App. 1 Cir. 7/30/03), 854 So.2d 403, 408, writ denied, 2003-2460 (La. 9/24/03), 854 So.2d 338, cert, denied, 540 U.S. 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004). Furthermore, the trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. R.J. v. M.J., 2003-2676, pp. 4-5 (La. App. 1 Cir. 5/14/04), 880 So.2d 20, 23.
In the case currently before this court, the trial court determined that an equal sharing of the physical custody of the parties' minor child (Dakota Ortego) would not be in the best interest of the child, relying heavily on the testimony of psychologist Dr. Rafael F. Salcedo, who examined the parties. Dr. Salcedo testified, by deposition, that it was important for Dakota to spend as much time as possible with his brother Ian Hardt (Mrs. Ortego's son from a prior marriage of whom she had sole custody) in order to maintain the "integrity of the sibling subsystem." In addition, Dr. Salcedo testified that exceptionally good communication and collaboration skills between parents are required for equal physical custody of a minor child, and Mr. and Mrs. Ortego do not have these skills. Dr. Salcedo stated that Mr. Ortego "came across as an extremely assertive, aggressive individual" who "obviously tends to be very domineering in his interpersonal relations." Dr. Salcedo further stated that he was concerned over the fact that Mr. Ortego "did not hesitate to criticize the mother rather openly regardless of who was present in the room, including his children [sic]." Further, Dr. Salcedo testified that it would not be in Dakota's best interest to live "out of a suitcase."
In written reasons for judgment, the trial judge stated, "The Court concurs totally with the opinion of Dr. Raphael Salcedo that [shared custody] would be totally unworkable and not in the best interests of this child." Based on the factual findings of the trial court, which we cannot say are without a reasonable basis in the record or manifestly erroneous, this court cannot say, on appeal, that the trial court abused its much discretion in denying equal physical custody of Dakota Ortego.